1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRIS RENTERIA, | Case No. 1:25-cv-00043-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT |
| v. | |
| LAND O'LAKES, INC., | |
| Defendant. | ORDER DEEMING DEFENDANT'S MOTION TO TRANSFER VENUE WITHDRAWN |
| | **OBJECTIONS DUE WITHIN 14 DAYS** |
| | (ECF Nos. 5, 6, 17) |

Currently before the Court is Plaintiff Iris Renteria's motion to remand and Defendant Land O'Lake's motion to transfer venue to the United States District Court, District of Minnesota or, in the alternative, motion to dismiss.

A hearing was held in this matter on April 9, 2025. (ECF No. 26.) Counsel Majed Dakak appeared for Plaintiff. Counsel Joel Andersen appeared on behalf of Defendant. At the hearing, Defendant informed the Court that it withdraws its motion to transfer venue (ECF No. 5).

Based on the moving, opposition, and reply papers, the record, and the arguments presented at the April 9, 2025 hearing, the Court recommends, for the following reasons, that Plaintiff's motion to remand be granted and Defendant's motion to dismiss be denied as moot.

1

1

# I.

2

## BACKGROUND

3      On December 10, 2024, Plaintiff filed her non-class action complaint in Tulare County

4   Superior Court.  (ECF No. 1-4 ("Compl.").)  Plaintiff alleges she was employed by Defendant

5   from approximately February 2021 until she was terminated by Defendant in January 2023.

6   (Compl. ¶¶ 5, 7.)  In February 2021, Defendant required that Plaintiff sign an Invention and Trade

7   Secret Agreement ("Agreement"), which included the following provision:

8
> While I am employed by Company and for one (1) year after the
> termination of my employment, I will not employ or solicit any

9
> Company employee, directly or indirectly, for employment by a
> firm or company engaged in or which is about to engage in the

10
> design, development, manufacturing, or marketing of any product,
> process, or service which resembles or competes with a product,

11
> process, or service about which I acquired proprietary information
> during employment with Company.

12

13   (Compl. ¶ 6 ("non-solicitation provision").)

14      Plaintiff brings one cause of action against Defendant for violation of California's Unfair

15   Competition Law ("UCL"), California Business & Professions Code §§ 17200 et seq.  (Compl. ¶¶

16   8-16.)  Plaintiff alleges the non-solicitation provision is unlawful pursuant to California Business

17   and Professions Code § 16600, which states in pertinent part that "every contract by which

18   anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that

19   extent void."  (Compl. ¶ 10 (quoting Bus. & Prof. Code § 16600(a)).)  Plaintiff further alleges that

20   newly enacted Business and Professions Code § 16600.1 requires that, by February 14, 2024,

21   employers notify current and former employees who were employed after January 1, 2022, whose

22   contracts include a noncompete clause or were required to enter a noncompete agreement, that the

23   noncompete clause or agreement is void.   (Compl. ¶ 13 (citing Bus. & Prof. Code §

24   16600.1(b)(1)).)   Plaintiff alleges that Defendant engaged in an unlawful business act by

25   including the non-solicitation provision in her Agreement and failing to provide notice by

26   February 14, 2024 that such provision is void.[1]   (Compl. ¶ 14.)  Plaintiff further alleges that

27   _____

[1] Because the Court recommends granting Plaintiff's motion to remand for lack of subject matter jurisdiction, the
28   Court declines to address the merits of Defendant's motion to dismiss regarding the applicability of Section
16600.1's prohibition of *noncompete* agreements to the *non-solicitation* provision at issue here.  The Court

Defendant has included the same or similar non-solicitation provision in the contracts of other members of the public that are employed by Defendant in California and has not advised them such provisions are void.  (Compl. ¶ 15.)  Plaintiff seeks public injunctive relief, attorney's fees, costs, and any other relief the Court may deem proper and just.  (Compl. at p. 8.)

On January 9, 2025, Defendant removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (Def's Not. Removal ("NOR"), ECF No. 1 at ¶¶ 15, 21.)  On January 16, 2025, Defendant filed a motion to transfer venue to the District of Minnesota pursuant to 28 U.S.C. 1404(a) and a motion to dismiss. (ECF Nos. 5, 6.)  Plaintiff filed oppositions to both motions (ECF Nos. 13, 14) and Defendant replied (ECF Nos. 15, 16).  On February 12, 2025, Plaintiff filed a motion to remand this action to Tulare County Superior Court. (ECF No. 17-1.)  Defendant filed an opposition (ECF No. 23), and Plaintiff replied (ECF No. 24).

## II.

## LEGAL STANDARDS

A defendant may remove a matter to federal court if the district court would have original jurisdiction.  See 28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction over state law civil actions between citizens of different states in which the amount in controversy exceeds $75,000 exclusive of costs and interest.  28 U.S.C. § 1332(a)(1).

A motion to remand is the proper procedure to challenge a removal based on lack of jurisdiction.  28 U.S.C. § 1447(c).  "Standing is a necessary component of the court's subject matter jurisdiction; if a plaintiff lacks standing, the court lacks jurisdiction." Rodriguez v. Old W. Exp., Inc., 711 F. Supp. 3d 1182, 1188 (E.D. Cal. 2024) (citing Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004)).  A removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c).  Polo v. Innoventions Int'l, LLC, 833 F.3d 1193, 1196 (9th Cir. 2016).  "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III."  Id. (Emphasis in original).

recommends denying Defendant's motion to dismiss as moot without prejudice to refiling in state court.

Ultimately, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." <u>Cal. ex rel. Lockyer v. Dynegy, Inc.</u>, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); <u>see also</u> <u>Provincial Gov't of Marinduque v. Placer Dome, Inc.</u>, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper."). Thus, if there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court. <u>Matheson v. Progressive Specialty Ins. Co.</u>, 319 F.3d 1089, 1090 (9th Cir. 2003).

## III.

## DISCUSSION

In seeking remand, Plaintiff argues this Court lacks subject matter jurisdiction because the allegations in her complaint do not establish Article III standing.[2] Specifically, the parties disagree whether the injunctive relief sought by Plaintiff under the UCL—injunctions (1) requiring that Defendant issue a notice to "all current and former California employees who worked for Defendant and had an unlawful non-solicitation provision in their contracts that such provisions are void and unenforceable" and (2) "enjoining Defendant from including and/or attempting to enforce such provisions in the contracts of their California employees in the future (Compl. ¶ 15)—constitute public injunctive relief.

### A.    Plaintiff's Requested Relief Does Not Constitute Public Injunctive Relief

Plaintiff argues this case must be remanded because she seeks only public injunctive relief, a remedy unique to California law, and such relief does not confer Article III standing on a plaintiff. Plaintiff emphasizes that she does *not* pursue this claim on her own behalf; rather, she has "chose[n] to remedy a public wrong by seeking a public injunction that benefits all of Defendant's current and former California employees since January 1, 2022." (ECF No. 17-1 at 3.) Defendant counters that the injunctive relief Plaintiff seeks does *not* constitute public injunctive relief because Plaintiff's requested relief is backward-looking; Plaintiff filed this lawsuit to benefit directly from its possible success; and the injunction Plaintiff seeks is not

---

[2] Plaintiff also argues the amount in controversy in this injunctive relief action does not exceed $75,000. Because the Court finds Plaintiff lacks Article III standing, the Court does not address the parties' dispute regarding the amount in controversy.

1  generally aimed at the public.  (ECF No. 23 at 3-4.)

2          Public injunctive relief has "three key features."  Hodges v. Comcast Cable Commc'ns,

3  LLC, 21 F.4th 535, 541 (9th Cir. 2021) (citing McGill v. Citibank, N.A., 2 Cal. 5th 945 (2017)).

4  First, it "has 'the primary purpose and effect of' *prohibiting* unlawful acts that threaten *future*

5  injury to the general public." Hodges, 21 F.4th at 541-42 (emphasis in original) (quoting McGill,

6  2 Cal. 5th at 955 (quoting Broughton v. Cigna Healthplans of California, 21 Cal. 4th 1066, 1077

7  (1999)).)  Second, public injunctive relief "does *not* constitute the pursuit of representative claims

8  or relief on behalf of others."  Hodges, 21 F.4th at 542 (emphasis in original) (quoting McGill, 2

9  Cal. 5th at 959-60).  Finally, public injunctive relief provides "diffuse benefits to the 'general

10  public' as a whole." Hodges, 21 F.4th at 542 (quoting McGill, 2 Cal. 5th at 955).

11          In short, public injunctive relief "is limited to forward-looking injunctions that seek to

12  prevent future violations of law for the benefit of the general public as a whole, as opposed to a

13  particular class of persons, and that do so without the need to consider the individual claims of

14  any non-party."  Hodges, 21 F.4th at 542 (holding that an injunction prohibiting future unlawful

15  conduct benefitting only "Comcast cable subscribers" rather than the public at large did not

16  constitute public injunctive relief).  "[E]ven if state law authorizes a plaintiff to seek a public

17  injunction on behalf of the general public, that authorization, standing alone, does not confer

18  standing in federal court." Rogers v. Lyft, Inc., 452 F. Supp. 3d 904, 919 (N.D. Cal. 2020), aff'd,

19  No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022).  Rather, a claim solely for public

20  injunctive relief does not generally satisfy the three elements of Article III standing.  Bow v.

21  Cebridge Telecom CA, LLC, No. 2:21-cv-00444-TLN-JDP, 2022 WL 313905, at *2 (E.D. Cal.

22  Feb. 2, 2022) ("Because such relief does not remedy a plaintiff's individual injury, the injury

23  would not be redressed and thus there would be no Article III standing.")

24          Defendant first argues that Plaintiff's requested injunction requiring that Defendant issue a

25  notice to "all current and former California employees who worked for Defendant and had an

26  unlawful non-solicitation provision in their contracts that such provisions are void and

27  unenforceable" is backward-looking.  (Compl. ¶ 15; ECF No. 23 at 3-4.)  Defendant contends that

28  because Section 16600.1 requires that all notices be sent by February 14, 2024 with no ongoing

1    notice requirement, Plaintiff seeks to change history, not fix the future.  (ECF No. 23 at 4.)  The

2    Court is not persuaded.  Plaintiff cannot request that the Court require Defendant to comply with

3    the expired February 14, 2024 deadline prescribed by Section 16600.1, nor does Plaintiff make

4    such request.  Instead, Plaintiff requests injunctive relief to, at an unspecified date in the future,

5    require Defendant to provide notice to affected past and current employees that the non-

6    solicitation provision is void. Even if Plaintiff's first requested injunction is not forward-looking,

7    Defendant fails to address Plaintiff's second requested injunction to "enjoin[] Defendant from

8    including and/or attempting to enforce such provisions in the contracts of their California

9    employees in the future." (Compl. ¶ 15.)   Plaintiff's second requested injunction is clearly

10   forward-looking relief that generally aims to prevent Defendant's allegedly unlawful conduct—

11   enforcement of a void non-solicitation provision—in the future.  Accordingly, the Court finds

12   Plaintiff seeks a forward-looking injunction that aims to prevent future violation of law.

13       Defendant further argues Plaintiff's requested injunctive relief does not constitute public

14   injunctive relief because it is directed for the benefit of Plaintiff and other similarly situated

15   individuals and not the general public.  The Court agrees.  The Ninth Circuit and the California

16   Supreme Court have made clear that public injunctive relief cannot be sought in pursuit of

17   representative claims or for the benefit of a discrete subset of similarly situated persons.  McGill,

18   2 Cal. 5th at 959-60; Hodges, 21 F.4th at 548 ("reaffirm[ing] that non-waivable 'public injunctive

19   relief' within the meaning of the McGill rule refers to prospective injunctive relief that aims to

20   restrain future violations of law for the benefit of the general public as a whole, *rather than a*

21   *discrete subset of similarly situated persons*, and that does so without requiring consideration of

22   the individual claims of non-parties.") (Emphasis in original).

23       Notably, the authorities cited by both parties in support of their respective positions

24   grapple with public injunctive relief in the context of false advertising and deceptive practices

25   rather than an employer's allegedly unlawful business practices.   See, e.g., DiCarlo v.

26   MoneyLion, Inc., 988 F.3d 1148 (9th Cir. 2021) (finding a plaintiff sought public injunctive relief

27   where she sought to enjoin the defendant from "[f]alsely advertising...within the State of

28   California that the [credit-builder] Loan contains 'no hidden fees.' "); Ramsey v. Comcast Cable

Commc'ns, LLC, 99 Cal. App. 5th 197, 208 (2023) (finding a plaintiff sought public injunctive relief where he requested to "enjoin[] Defendants' unfair or deceptive acts or practices and correcting all false and misleading statements and material omissions concerning pricing models, reasons for changes in pricing, and the availability of discounts, to prevent future injury to the general public" because it benefitted existing Comcast subscribers and potential subscribers); Cottrell v. AT&T Inc., 2021 WL 4963246, at *1-2 (9th Cir. Oct. 26, 2021) (finding a plaintiff did *not* seek public injunctive relief where he sought an order requiring AT&T to give its customers individualized notice that AT&T improperly charged customers for accounts without authorization and to refrain from further violations because such relief would benefit only AT&T customers); Croucier v. Credit One Bank, N.A., No. 18-cv-20-MMA (JMA), 2018 WL 2836889, at *5 (S.D. Cal. June 11, 2018) (declining to find that the requested injunctive relief was public injunctive relief where "the putative class affected by the alleged conduct [robo-calls to customers who failed to make timely payments and who also revoked consent to receive such calls] would be limited to a small group of individuals similarly situated to the plaintiff").

Plaintiff argues that the requested public injunctive relief in California Crane School, Inc. v. Google, 722 F. Supp. 3d 1026 (N.D. Cal. Mar. 21, 2024) is identical to her own requested public injunctive relief prohibiting future noncompete clauses.  (ECF No. 24 at 4.)  The Court disagrees.  Contrary to Plaintiff's intimation in her briefing and her express statements at the April 9, 2025 hearing, the UCL claim for unlawful business practices in California Crane is not predicated on unlawful noncompete clauses between an employer and employees pursuant to Section 16600.  Rather, the California Crane plaintiff alleged that Apple and Google unlawfully agreed to divide the markets for online search and search advertising *between each other*.  Id. at 1031-32.  The plaintiff asserted that, by entering the alleged noncompete agreement, Google and Apple had harmed the general public by reducing the quality of general search services as they related to privacy, data protection, the use of consumer data, choice in general search services, and innovation.  Id. at 1036.  The district court agreed, concluding that the plaintiff's requested public injunctive relief under the UCL to enjoin Google and Apple from entering future profit-sharing noncompete agreements "would provide diffuse benefits to the public by potentially

1    bolstering competition in the search and search advertising markets, increasing consumer choice,
2    improving data privacy, and decreasing costs for both general search engine users and digital
3    advertisers like [plaintiff]. Greater competition could also accelerate innovation, bringing positive
4    downstream effects on internet users as a whole." Id. at 1036-37.

5        In contrast to the consumer-oriented public injunctive relief requested in California Crane,
6    courts have generally found that claims by employees alleging unlawful practices by employers
7    seek *private* injunctive relief because the proposed remedy runs directly to the plaintiff and other
8    similarly situated employees rather than the general public.  For example, in Capriole v. Uber
9    Techs., Inc., 7 F.4th 854 (9th Cir. 2021), the plaintiffs argued their proposed injunction against
10   Uber's classification of drivers for its ride-sharing platform as independent contractors qualified
11   as public injunctive relief.  The Ninth Circuit disagreed, finding that "the relief sought by
12   Plaintiffs...is overwhelmingly directed at Plaintiffs and other rideshare drivers, and they would be
13   the primary beneficiaries of access to overtime and minimum wage laws."  Id. at 870 (citations
14   and quotations omitted).  See also Magana v. DoorDash, Inc., 343 F. Supp. 3d 891 (N.D. Cal.
15   2018) (holding the plaintiff did not assert a claim for public injunctive relief against DoorDash for
16   misclassification in violation of the California Labor Code because the claims had the primary
17   purpose and effect of redressing and preventing harm to DoorDash's employees and  "any benefit
18   to the public would be derivate of and ancillary to the benefit to DoorDash's employees (in the
19   form of, for example, the company's increased tax payments and employees' possible decreased
20   dependence on assistance from the state government)." (Emphasis in original)).

21       Courts have also found injunctive relief related to an employer's wage and hour violations
22   are private in nature.  For example, in Clifford v. Quest Software Inc., 38 Cal. App. 5th 745
23   (2019), the plaintiff alleged various California Labor Code violations and parallel unfair business
24   practices by his employer.  Id. at 753.  The plaintiff sought public injunctive relief for his UCL
25   claim to prevent his employer from committing similar violations in the future.  Id.  The district
26   court found "an employee's request for an injunction requiring his employer to comply with the
27   Labor Code is indisputably private in nature."  Id. at 756.  The court ultimately held the requested
28   relief did not constitute public injunctive relief because the only potential beneficiaries of the

relief were the employer's current employees, not the public at large.  Id.; see also Torrecillas v. Fitness Int'l, LLC, 52 Cal. App. 5th 485, 500 (2020) (requested relief was not public injunctive relief because the "beneficiary of an injunction would be [plaintiff] and possibly [defendant]'s current employees, not the public at large"); Prostek v. Lincare Inc., 662 F. Supp. 3d 1100, 1118 (E.D. Cal. 2023) (noting the requested injunction under the UCL to correct allegedly unlawful practices relating to employee-employer relationships and obligations, such as an entitlement to rest periods and wages "would benefit Defendants' employees or former employees, who are similarly situated to [plaintiff]. But it is unclear how the general public would benefit from preventing further violations of the alleged Labor Code sections.").

Additionally, courts have found employees seeking an injunction from an employer's allegedly discriminatory business practices constitutes private rather than public injunctive relief. See, e.g., Netzel v. Am. Express Co., No. CV-22-01423-PHX-SMB, 2023 WL 4959587, at *4 (D. Ariz. Aug. 3, 2023) (concluding that a requested injunction brought under the UCL for FEHA violations to prohibit racial discrimination against employees did *not* constitute public injunctive relief because the plaintiffs sought to redress their specific injuries and injuries to a group of individuals similarly situated to the plaintiffs); but see Vaughn v. Tesla, Inc., 87 Cal. App. 5th 208, 232 (2023), reh'g denied (Jan. 20, 2023), review denied (Apr. 12, 2023) (finding a request for public injunctive relief under the FEHA had the primary purpose and effect of prohibiting unlawful acts that threatened future injury to the general public because employees, their families, and their communities as well as future applicants and employees would benefit from an injunction enjoining "the fifth-most valuable company in America in 2021, and one of Alameda County's biggest employers" from engaging in employment discrimination).

With this context of injunctive relief stemming from employer-employee contractual relationships versus that stemming from false advertising and deceptive practices, the Court concludes the relief Plaintiff seeks in this action does not constitute public injunctive relief. Although Plaintiff crafts the caption of her complaint and prayer for relief to expressly request public injunctive relief, the complaint contains no allegations describing *any* public benefit from either requested injunction.  (See Compl. generally.)  Rather, Plaintiff qualifies the only allegation

containing non-cursory reference to the general public as limited to individuals employed by Defendant.  (Compl. ¶ 15 ("Defendant has similarly included the non-solicitation provision, or substantially similar provisions, in the contracts of *other members of the public employed by Defendant in California*….") (Emphasis added).)  Further, the specific relief sought by Plaintiff is to (1) provide notice to former and current California employees the non-solicitation provision is void and (2) prevent Defendant's potential future enforcement of non-solicitation provisions contained in former and current employees' contracts.  (Id.)  Such relief—to have notice of a void contractual provision and enjoining Defendant from enforcing that provision—would primarily benefit Defendant's current and former California employees.  Thus, the individuals who stand to benefit from Plaintiff's requested relief are necessarily limited to those who entered into a contractual relationship with Defendant *and* whose employment contracts contained the same or similar non-solicitation provision at issue. See Hodges, 21 F.4th at 546 (noting courts, including the Ninth Circuit, "have already recognized that injunctive relief aimed at regulating the substantive terms of contractual arrangements is private injunctive relief that primarily benefits those who enter into such contracts."). This circumscribed group of similarly situated persons who stand to benefit from Plaintiff's requested injunctive relief does not constitute the general public as a whole.

Plaintiff argues that "[b]y requiring Defendant to notify its current and former employees that the non-solicitation provision in their contracts is void and prohibiting Defendant from including unlawful non-solicitation provisions…in its contracts in the future, Plaintiff's requested injunctions benefit the entire California population by removing barriers to economic development, innovation, and growth."  (ECF No. 24 at 6.)  The Court does not doubt the public has an interest in these broad-brush principles.  Plaintiff, however, conflates the magnitude of her averred public interest with the manner in which a public injunction benefits the general public in equal shares.  Rogers, 452 F. Supp. 3d at 921 (contrasting relief requesting that Lyft reclassify its drivers from independent contractors to employees, which affects drivers only, with an injunction that enjoins false advertising or deceptive labeling, which could trick any member of the public).  Plaintiff's averred benefit to the public—removing Defendant's alleged barrier to economic

development, innovation, and growth by enjoining it from enforcing the non-solicitation provision—is, at best, collateral to the benefit to Defendant's current and former employees whose contracts contain the non-solicitation provision.  See Clifford, 38 Cal. App. 5th at 754-55 (explaining that although "[t]he public certainly has an interest in securing an employer's compliance with wage and hour laws," such interest to the public does not transform a private UCL injunctive relief claim to a public one).  That the general public may incidentally benefit from enjoining Defendant from enforcing its non-solicitation provision against its former and current employees is insufficient to classify such relief as public injunctive relief.  Accordingly, the Court finds Plaintiff's requested injunctive relief to notify Defendant's current and former employees that the non-solicitation provision in their employment contracts is void and enjoining Defendant from enforcing that provision does not constitute public injunctive relief.

### B.    Plaintiff Does Not Otherwise Allege She Has Article III Standing

Defendant summarily concludes that, because Plaintiff's complaint is not one for public injunctive relief, she has standing in federal court.  (ECF No. 23 at 5.)  The Court disagrees the analysis ends there.  At this stage, the plaintiff must still allege sufficient facts that, taken as true, "demonstrat[e] each element" of Article III standing.  Jones v. L.A. Cent. Plaza LLC, 74 F.4th 1053, 1057 (9th Cir. 2023) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).  Thus, although the Court agrees with Defendant that Plaintiff's requested relief does not constitute public injunctive relief, Plaintiff must still allege she has standing to pursue injunctive relief under the UCL in federal court.  See Cal. Bus. & Prof. Code § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.").

Competent jurisdiction in this Court requires the "irreducible constitutional minimum" that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338.  The party invoking federal jurisdiction bears the burden of establishing these elements, which, at the pleadings stage, means pointing to "clearly...alleg[ed] facts demonstrating each element." Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).  Here,

Plaintiff moves for remand for lack of standing in federal court. Thus, Defendant is the party invoking federal jurisdiction. Defendant therefore bears the burden of showing that Plaintiff has alleged a concrete and particularized injury caused by Defendant that is redressable by this Court. The Court finds Defendant fails to meet its burden.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " Spokeo, 578 U.S. at 339 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, (1992)). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way.' " Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560 n.1.). However, particularization alone is insufficient to establish injury in fact. "An injury is concrete if it is *de facto*; that is, it must actually exist, meaning that it is real and not abstract." Spokeo, 578 U.S. at 340 (quotations omitted). " 'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the Supreme Court has] confirmed in many...previous cases that intangible injuries can nevertheless be concrete." Id.; see TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021) (listing reputational harms, disclosure of private information, and intrusion upon seclusion as examples of concrete intangible harms.) Relevant here, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 578 U.S. at 341; see also Summers v. Earth Island Institute, 555 U.S. 488, 496 (2009) (explaining "deprivation of a procedural right without some concrete interest that is affected by the deprivation —a procedural right *in vacuo*—is insufficient to create Article III standing")

Defendant conceded at the April 9, 2025 hearing that Plaintiff's complaint does not "specifically allege[] anything about how she has been or will be harmed by anything that Land O'Lakes has done." (See ECF No. 26 at 10:49:00-10:49:13.)[3] The Court agrees. Plaintiff alleges she was terminated from her employment at Land O'Lakes in January 2023. (Compl. ¶ 7.) Thus,

---

[3] The April 9, 2025 hearing was memorialized using an Electronic Court Recording Operator ("ECRO"). The Court's citations are to the timestamp assigned by the recording device as no transcript is generated. Direct quotes from the audio recording cited herein have been cleaned up to remove disfluencies.

1    regardless of whether the non-solicitation provision is void, Plaintiff's non-solicitation provision

2    expired in January 2024, one year after her termination.  (See Compl. ¶ 6.)  Plaintiff does not

3    allege any past injury from the non-solicitation provision while it was in effect.  (See Compl.

4    generally.)  Even if she did, past wrongs, by themselves, are insufficient to establish standing for

5    injunctive relief.  Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018).

6         Plaintiff does not allege any actual or imminent injury as a result of Defendant's failure to

7    provide notice that the non-solicitation provision is allegedly void.  Plaintiff alleges she knows

8    the provision is void, despite Defendant's alleged statutory violation of Section 16600.1 for

9    failure to provide such notice by February 14, 2024.  (Compl. ¶ 14.)  Defendant points to no

10   allegation in the complaint that shows "a sufficient likelihood that [Plaintiff] will again be

11   wronged in a similar way." Davidson, 889 F.3d at 967 (quoting City of Los Angeles v. Lyons,

12   461 U.S. 95, 111 (1983)).  Plaintiff's non-solicitation provision expired in January 2024 and

13   Plaintiff does not allege she plans to be employed by Defendant again.  Cf. In re Coca-Cola Prod.

14   Mktg. & Sales Pracs. Litig. (No. II), No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31,

15   2021) ("Without any stated desire to purchase [defendant's product] in the future, [plaintiffs] do

16   not have standing to pursue injunctive relief.")

17        Likewise, Plaintiff's requested injunction that Defendant be enjoined from future

18   enforcement of the non-solicitation provision does not establish injury in fact to confer standing

19   under Article III.  Plaintiff's complaint alleges no threat of future harm.  To be sure, "material risk

20   of future harm can satisfy the concrete-harm requirement in the context of a claim for injunctive

21   relief to prevent the harm from occurring, at least *so long as the risk of harm is sufficiently*

22   *imminent and substantial*." TransUnion, 594 U.S. at 415; see also In re Zappos.com, Inc., 888

23   F.3d 1020, 1024 (9th Cir. 2018) (noting that "[a] plaintiff threatened with future injury has

24   standing to sue if the threatened injury is certainly impending, or there is a substantial risk that the

25   harm will occur.") (citations and quotations omitted).  Here, however, Plaintiff makes no

26   allegation of any imminent injury from Defendant's future enforcement of her now-expired non-

27   solicitation provision or even that there is a substantial risk that such enforcement will ever occur.

28   Because there is no allegation in the complaint that Plaintiff has or will suffer an actual and

imminent injury from the non-solicitation provision, the Court finds Defendant's alleged violations of Sections 16600 and 16600.1 under the UCL do not establish an injury in fact for Article III purposes.[4]

Although the Court agrees with Defendant that Plaintiff does not seek public injunctive relief under current Ninth Circuit authorities, Defendant fails to meet its burden to show that Plaintiff has alleged an injury caused by Defendant that is redressable by this Court.  The Court finds Plaintiff in this removed case lacks Article III standing and therefore recommends the action be remanded to state court.  See Polo, 833 F.3d at 1196 (finding remand is appropriate because "[s]tate courts are not bound by the constraints of Article III.").

### IV.

### ORDER AND RECOMMENDATION

Accordingly, IT IS HEREBY ORDERED that Defendant's motion to transfer venue (ECF No. 5) is WITHDRAWN.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.    Plaintiff's motion to remand (ECF No. 17) be GRANTED;

2.    Defendant's motion to dismiss (ECF No. 6) be DENIED as moot; and

3.    The action be REMANDED to Tulare County Superior Court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will review the

---

[4] No party challenges whether this Court has equitable jurisdiction.  "Equitable jurisdiction is distinct from subject matter jurisdiction, although both are required for a federal court to hear the merits of an equitable claim."  Guzman v. Polaris Industries Inc., 49 F.4th 1308, 1313 (9th Cir. 2022).  While subject matter jurisdiction concerns "whether the claim falls within the limited jurisdiction conferred on the federal courts" by Congress, equitable jurisdiction concerns "whether consistently with the principles governing equitable relief the court may exercise its remedial powers."  Id..  Because the Court finds it does not have subject matter jurisdiction, the Court need not consider whether it has equitable jurisdiction over Plaintiff's requested injunctive relief.

Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 12, 2025**                          _____

STANLEY A. BOONE
United States Magistrate Judge